**B. DOE, M.D., on behalf of B. Doe and B. Doe's patients, Plaintiffs,**

**v.**

**ST. JOSEPH'S HOSPITAL OF FORT WAYNE; Ancilla Domini Sisters, Inc.; Board of Directors of St. Joseph's Hospital of Fort Wayne; Sister Theodorita Schotzko; Richard A. Rielly, M.D.; Medical Staff of St. Joseph's Hospital of Fort Wayne; Samuel R. Musselman, M.D.; William E. Brandt, M.D.; Shashi Ahuja, M.D.; Linus Minick, M.D.; Sisira Ranasinghe, M.D.; Jeff Towles, M.D.; Robert Barnes, M.D.; Ramesh Bhat, M.D.; Alfred Stovall, M.D.; Richard Bauman, M.D.; Dale Aeschliman, M.D.; J. Paul Gentile, M.D.; Louis Schneider, M.D.; Gerald Nolan, M.D.; all individuals in their official capacities, Defendants.**

**No. F 83–201.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Jan. 30, 1987.

Ivan E. Bodensteiner, Valparaiso, Ind., Stephen P. Rothberg, Fort Wayne, Ind., for plaintiffs.

Patrick G. Michaels, Paul B. McNellis, Fort Wayne, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is before the court on Plaintiffs' Motion to Compel Discovery filed July

26, 1984. The Defendants filed a memorandum in opposition on August 2, 1984 and Plaintiffs replied on August 13, 1984. The Honorable William C. Lee granted the Defendants' motion to dismiss before ruling on the discovery motion and that decision was appealed to the United States Court of Appeals for the Seventh Circuit. The Court of Appeals affirmed in part and reversed in part the dismissal. *See, Doe on behalf of Doe v. St. Joseph's Hospital of Fort Wayne*, 788 F.2d 411 (7th Cir.1986). The Court of Appeals affirmed the dismissal of the plaintiffs' antitrust claims, and claims brought under Title VI of the Civil Rights Act of 1964. *Id.*, at 417–421. In addition, the Court of Appeals reversed the dismissal of the plaintiffs' claims under Title VII of the Civil Rights Act of 1964 and Section 1981 of Title 42 of the United States Code. *Id.*, at 417–422. Jurisdiction is premised upon Section 1331 of Title 28 of the United States Code.

■ At issue in this case is the conflict between the privilege created by the State of Indiana for Health Care Provider Peer Review Committees, and the limited recognition of privileges in federal courts under Rule 501 of the Federal Rules of Evidence. Indiana has decided that policing the quality and professionalism of Health Care Providers is an extremely high priority. To enable the health care professionals to properly police their own ranks the Indiana General Assembly enacted a law which declares that "[a]ll proceedings of a peer review committee shall be confidential, and all communications to a peer review committee shall be privileged communications to the peer review committee." I.C. § 34–4–12.6–2(a). Further, "... no records, or determinations of or communications to, a peer review committee shall be: (1) subject to subpoena or discovery; or (2) admissible in evidence in any judicial or administrative proceeding ... without prior waivers executed by the committee." I.C. § 34–4–12.-6–2(c). That statute and its provisions are not limited in application to medical malpractice cases. *Parkview Memorial Hospital, Inc. v. Pepple*, 483 N.E.2d 469, 470 (Ind.App. 3 Dist.1985).

A careful reading of the statute illustrates that the Indiana General Assembly intended to protect the communications to, records of and determinations of only the peer review committee. Information acquired for decisions made independently from the peer review committee is not included under the umbrella of the privilege.

■ The hospital bylaws, under the heading "Corrective Action", permit "Summary Suspension". *See*, Bylaws of the Medical Staff of Saint Joseph's Hospital, Article VII Section 2. That section states:

Any one of the following: 1) The President of the Medical Staff; ... 3) The Executive Committee of the Medical Staff, after consultation with the President of the Medical Staff; 4) The Executive Committee of the Board of Directors after consultation with the President of the Medical Staff; ... shall each have the authority, whenever action must be taken immediately in the best interest of patient care in the hospital, to summarily suspend all or any part of the clinical privileges of a practitioner, and such summary suspension shall become effective immediately upon imposition.:

The Indiana Statutes states:

The committee must meet the following criteria:

(1) The committee is organized:

(A) by a state, regional, or local organization of professional health care providers or by a not-for-profit foundation created by such a professional organization for purposes of improvement of patient care;

(B) by the professional staff of a hospital, another health care facility, or a professional health care organization;

(C) by state or federal law or regulation; or

(D) as a governing board of a hospital or professional health care organization.

(2) A majority of the members of the committee are professional health care providers holding licenses in the stated profession of the committee, or the gov-

erning board of a hospital or professional health care organization. I.C. § 34–4–12.6–1(c)(1).

The statute is clear and unambiguous and does not protect the records of, communications to, or the determinations of a single individual empowered by the Medical Staff bylaws to summarily suspend a medical staff member's clinical privilege.

It is implicit in the statutory scheme that the Indiana General Assembly recognized that a peer review committee was the preferred method to handle the delicate problems involved in maintaining the highest possible standards for health care providers. The medical staff's choice of a method to summarily suspend medical staff privileges in addition to the peer review committee does not include that method under the umbrella of protection of I.C. § 34–4–12.6–2(c). Therefore, in this case, *all* records, communications and determinations which formed the basis of the decision, by the President of the Medical Staff, to summarily suspend the plaintiff's staff privileges are not protected by the privilege.

The Indiana statute was clearly intended to protect, by granting a privilege, the peer review committee proceedings. "Rule 501 of the Federal Rules of Evidence provides the framework for determining whether material sought in discovery is privileged." *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981); *accord, E.E.O.C. v. University Notre Dame Du Lac*, 715 F.2d 331, 334–35 (7th Cir.1983); *Schafer v. Parkview Memorial Hospital, Inc.*, 593 F.Supp. 61, 62 (N.D.Ind.1984). The analysis of the state privilege "shall be governed by the principles of common law as they may have been interpreted by the courts of the United States in light of reason and experience." Fed.R.Evid. 501. In addition, the purpose of Rule 501 is to permit "flexibility to develop rules of privilege on a case-by-case basis ... and leave the door open to change." *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980); *accord, E.C.O.C. v. University of Notre Dame Du Lac*, 715 F.2d at 335; *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d at 1061.

In the spirit of Rule 501 the court must analyze the application of I.C. § 34–4–12.6–2(c) in light of the specific facts and circumstances of this case. Several principles or factors which provide guidance for that analysis have been presented in this circuit. *See, Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531 (7th Cir.1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978); *E.E.O.C. v. University of Notre Dame Du Lac*, 715 F.2d 331 (7th Cir.1983); *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058 (7th Cir.1981); *Schafer v. Parkview Memorial Hospital, Inc.*, 593 F.Supp. 61 (N.D.Ind. 1984). Those principles or factors include: (1) since "evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and where recognized must be narrowly construed", *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); (2) the court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case, *Ryan*, 568 F.2d at 543; (3) the communications must originate in a confidence that they will not be disclosed, *Schafer*, 593 F.Supp. at 64; and (4) the relation must be one which in the opinion of the community ought to be sedulously fostered. *Id.*

In this case it is clear that the public policy of the State of Indiana is that the privilege granted to the peer review committee ought to be sedulously fostered. The benefits to the quality and professionalism of health care providers by candid disclosures are clear. Further, the recognition of the privilege will protect the candid disclosures to the peer review committee. Finally, communications to the peer review committee originate in the confidence that they will not be disclosed.

**680**

The critical question is the balance between the need for truth and the importance of the state privilege. This privilege is very important and unbridled discovery of the communications to, records of and determinations of the peer review committee should never be permitted. Nevertheless, the need for truth in cases which allege that the communication to, records of or determinations of the peer review committee illustrate discrimination outweighs the right to an absolute privilege. The delicate balance in this case requires that the plaintiff allege facts which create more than a mere inference that the actions of the peer review committee were discriminatory, before the court will permit even an *in camera* inspection of the communications to, records of or determinations of the peer review committee. At this point the allegations and facts before this judge do not create more than a mere inference of discrimination.

It is clear that the Indiana statute which granted a privilege to health care provider peer review committees provided a reasonable basis for the defendants to object to the plaintiffs' discovery requests. Therefore, sanctions under Rule 37 of the Federal Rules of Civil Procedure would not be appropriate.

Accordingly, and for all the above reasons, it is the ORDER of the Court that the plaintiffs' Motion to Compel Discovery be, and is hereby, GRANTED IN PART and DENIED IN PART. It is FURTHER ORDERED that the records, communications, and other reasons which formed the basis of Dr. Thompson's, President of the Medical Staff, decision to summarily suspend the plaintiff are NOT SUBJECT to the privilege granted by I.C. § 34–4–12–6–2(c). SO ORDERED.