## BLOOM *v.* THE STATE.

[No. 19,229. Filed October 4, 1900.]

CRIMINAL LAW.—*Indeterminate Sentence Law.*—The act of February 26, 1897 (Acts 1897 p. 69), known as the indeterminate sentence law, is valid. *p. 294.*

SAME.—*Indeterminate Sentence Law.*—*Verdict.*—A verdict finding defendant guilty of manslaughter is not rendered void because it con-

Bloom *v.* State.

tains the statement that defendant "is about 55 years old," since the finding of age has relation to the place, not the justice, of the punishment. *p. 294.*

CRIMINAL LAW.—*Manslaughter.*—*Evidence.*—*Sufficiency.*—Defendant rented to deceased a stall in his barn in which to keep a horse a part of each day. Deceased brought feed for his horse which, without objection from defendant, he kept in that part of the barn where the latter kept his feed. In opening the barn door, deceased had to free a hasp held over a staple by a pin. Defendant, becoming suspicious that deceased was stealing feed, concealed himself in the barn loft and saw him taking it. On the following night defendant shot and mortally wounded deceased while in the act of stealing hay. There was no evidence that defendant's feed was kept in a place that was not openly accessible from the stall rented by deceased. *Held,* that the evidence is sufficient to sustain a conviction. *pp. 294, 295.*

SAME.—*Admissions.*—*Instruction.*—Though, in the trial of a criminal case, the jury "may determine the law for themselves," the court is not invading the province of the jury in stating to them the law as applicable to the facts as sworn to by defendant. *pp. 295, 296.*

SAME.—*Instruction.*—The following instruction: "If you find," etc., stating the facts that constitute voluntary manslaughter, "you should find the defendant guilty of voluntary manslaughter," is not erroneous, as being an invasion of the province of the jury. *p. 296.*

SAME.—*Homicide.*—*Instruction.*—Where, on the trial of one charged with homicide, there was no evidence that would justify a claim that the homicide resulted from an attempt to prevent a burglary, an instruction as to the effect of burglary as a defense was error prejudicial to the prosecution, and of which the defendant could not complain. *pp. 296, 297.*

SAME.—*Admissions.*—*Harmless Error.*—Error in admitting testimony of admissions of defendant which were obtained by coercion is cured by the defendant testifying to the same facts. *p. 297.*

TRIAL.—*Misconduct of Juror.*—*Appeal.*—Where misconduct of a juror was alleged in a motion for a new trial, and the evidence thereof as presented to the trial court was conflicting, such evidence will not be reviewed on appeal. *p. 297.*

From the Huntington Circuit Court. *Affirmed.*

*J. B. Kenner* and *U. S. Lesh,* for appellant.

*W. L. Taylor,* Attorney-General, *J. S. Branyan, H. G. Colerick, Merrill Moores* and *C. C. Hadley,* for State.

BAKER, C. J.—Appellant was convicted of manslaughter. Two rulings are presented as erroneous,—denying a new

trial, and pronouncing judgment under the indeterminate sentence law.

It has been decided repeatedly that the indeterminate sentence law is valid. *Miller* v. *State,* 149 Ind. 607; *Skelton* v. *State,* 149 Ind. 641; *Vancleave* v. *State,* 150 Ind. 273; *Wilson* v. *State,* 150 Ind. 697; *Davis* v. *State,* 152 Ind. 145. The majority of the court see no reason for departing from those decisions.

Objection is made to the verdict because it states that the defendant "is *about* fifty-five years old". Appellant was sentenced to the penitentiary. If in fact he is under thirty, he may take steps to be transferred to the reformatory. *Colip* v. *State,* 153 Ind. 584. The finding of age has relation to the place, not the justice, of the punishment.

Appellant contends that the verdict is not sustained by sufficient evidence. By the appellant's own testimony the conviction was justified. He owned a farm. Bess, the deceased, was an oil-well driller. About a week before the homicide Bess was employed near appellant's farm. His hours of service were from noon till midnight. He lived several miles distant from his place of employment. He drove to and from his work. He went to appellant to engage a place in which to keep his horse and buggy. Appellant rented Bess a stall in his barn for the horse, and permitted the buggy to stand in the barn-yard. Appellant states that when he rented the stall to Bess he did not give him any permission to go into the part of the barn where appellant kept his corn, oats, and hay. Bess brought feed for his horse with him each day in a sack. This feed, with appellant's acquiescence, was put by Bess outside the stall in the general part of the barn where appellant had his hay, etc. At Bess's request, appellant fed the horse in the evening from Bess's sack. In a day or two after the arrangement was made, appellant began to miss some of his corn and hay. He suspected Bess. He put marked wooden pins in the pith of his cobs of corn, and found that Bess was

bringing back this marked corn in his sack as feed for his horse. Appellant thus had circumstantial proof that Bess, upon quitting work at midnight, went to the barn to get not only his horse but also appellant's corn. To have direct ocular proof, appellant and his son the night before the homicide concealed themselves in the barn-loft and watched. They saw Bess and a companion named Burke take corn and oats and chickens, put them in Bess's buggy, and drive away. The next day appellant did not have Bess arrested, nor forbid him the use of the barn, but went to town and got a gun with which "to mark the fellows that were stealing from him". That night he and his son again concealed themselves in the barn-loft and watched. Bess came, opened the barn, harnessed his horse, tied up a bundle of appellant's hay in the barn, took it out into the barn-yard, and was putting it into his buggy when he was shot. Appellant watched these doings from the loft. When Bess went out with the hay, appellant stepped to the side of the barn-loft and fired through an opening. He aimed at Bess's feet, but stepped back as he shot and the charge struck Bess at the knee. The wound proved fatal. There was no evidence that appellant's oats, corn, or hay was kept in a place that was not openly accessible from the stall rented to Bess. In opening the barn-door Bess had to free a hasp held over a staple by a pin.

Error is predicated on the giving and refusal of instructions. In the course of a very elaborate charge, the court used these expressions, of which complaint is made: "The theory of the defense is that the deceased, James Bess, was in the act of stealing or had stolen property from the barn of the defendant. * * * If the deceased had a lawful right to enter the barn of the defendant, and while in such barn committed a larceny or theft of the property of the defendant, and was outside the barn making off with it, then the defendant had no legal right to shoot him. There is no law that will justify the killing of one person by an-

other for the crime of petit larceny. * * * If you find from the evidence that Bess and the defendant had agreed that Bess should keep his horse in defendant's barn, then Bess at the time he was shot was in a place where he had a right to be, and if you find that at the time Bess was stealing a small bundle of hay, and defendant knew that he had no other purpose, he was stealing by mere trespass, and if the owner of the property shot and killed him, he can not avail himself of the defense that Bess was so stealing." Appellant insists that the court infringed upon the right of the jury to decide the facts and determine the law. The court assumed no fact that was not clearly established by appellant's own evidence. A party will not be heard to complain of the court's acceptance of his own testimony as true. The court stated correctly the law applicable to the facts admitted by appellant. Though in this State the jury "may determine the law" for themselves, the court is not invading the province of the jury, but is discharging an imperative duty, in stating to the jury the law applicable to the facts.

The court charged the jury: "If you find," etc., stating the facts that constitute voluntary manslaughter, "you should find the defendant guilty of voluntary manslaughter." Here, too, appellant is mistaken in claiming that the court deprived the jury of the right to determine the law by advising them that they ought to convict the defendant if they found he had done the acts denounced by the statute as felonious.

The court at great length informed the jury of the circumstances under which a person has the right to take life in defense of his person and property or to prevent the commission of a felony. Arguments are made that these instructions prove that the court was wrong in that part of the charge hereinabove set forth which excludes the defense that appellant shot to prevent the commission of a burglary, and that the two lines of instructions must have tended to

Bloom *v.* State.

confuse the jury. The evidence did not require these last instructions. The testimony of appellant has been referred to. The other evidence of the defense and that of the prosecution correspond with appellant's account of the homicide. There was no evidence that would justify a claim that the homicide resulted from an attempt to prevent the commission of a burglary. There was no burglarious breaking, even if Bess, before he entered the barn, intended to commit a larceny therein. If it was error to submit to the jury the question whether or not the shot was fired to prevent the commission of a burglary, it was an error prejudicial to the prosecution, not to the defense. Appellant could only have profited by any confusion in the minds of the jury, as to the law, for on the facts stated by appellant he was guilty under the law.

The court did right in excluding evidence that Bess was accustomed to go armed and was a dangerous man.

Appellant reserved exceptions to the prosecution's evidence of appellant's admissions. Objection was made to the introduction of this evidence on the ground that the admissions were obtained by coercion. The court heard evidence as to the circumstances under which the admissions were made, and then overruled the objection. It is unnecessary to review that ruling, because, even if it was erroneous, appellant cured the error by going upon the stand and testifying to the same facts.

Misconduct of a juror was alleged in the motion for a new trial. Appellant filed affidavits in support of the charge, the juror filed his affidavit denying it, and the court further heard the affiants orally. The juror denied the charge explicitly, but appellant claims that the cross-examination of the juror virtually destroyed his direct testimony. This was for the court to decide. There was evidence to support the finding that the juror was not guilty of the alleged misconduct, and this court will not undertake to determine where the preponderance lay.

Judgment affirmed.